JAMES O'KEEFE, v. AARON DILLENBECK

(Filed September 5, 1905.)

1. APPEAL Evidence—Case Made. Where an objection is made
   to the introduction of evidence, and the objection is sustained, the
   evidence should be set up in the record, or so much thereof as·may
   be necessary to show to this court that its rejection was injurious
   to the party complaining, or the assignment of error for this rea-
   son will not be considered by this court.

2. TAX DEED—Presumptions. In an action of ejectment, where the
   plaintiff relies upon a tax deed for his title, such deed when signed
   and executed by the county treasurer in his official capacity, and
   acknowledged before some officer authorized to take acknowledg-
   ments of deeds, shall be presumptive evidence: First, that the real
   property deeded was subject to taxation for the year or years
   stated in the deed; second, that the taxes were not paid at any
   time before the sale; third, that the real property deeded had not
   been redeemed from sale at the date of the deed; fourth, that the
   property had been listed and assessed; fifth, that the taxes were
   levied according to law; sixth, that the property was sold for taxes
   as stated in the deed, and was duly advertised before being sold.
   And before such deed can be defeated, it must be clearly pleaded
   and clearly proven that some one of the above six requisites was
   wholly omitted, and not done, and a showing that any one of them
   was irregularly done, will not be sufficient to defeat the deed, and
   until these facts are properly pleaded, it is not error to refuse
   proof of such facts.

3. TAX DEED—Action to Set Aside—Limitation. Under the laws of
   of this territory, where real estate is sold for non-payment of
   taxes, and a deed not void upon its face is signed and executed by
   the county treasurer in his official capacity, and acknowledged be-
   fore some officer authorized to take acknowledgments of deeds
   and recorded in the proper record of titles of real estate, and the
   purchaser has gone into possession under such deed, no action
   shall be commenced by the former owner or owners of the land
   ·or by any person claiming under him or them to avoid such deed,
   unless such action shall be commenced within one year after the
   recording of such deed.

(Syllabus by the Court.)

*Error from the   District Court of   Logan County;   before
Jno. H. Burford, Trial Judge.*

*Lawrence & Houston,* for plaintiff in error.

*H. M. Adams,* and *Strang & Devereux,* for defendant in error.

### STATEMENT OF THE CASE.

This is an action brought by Aaron Dillenbeck, defendant in error, plaintiff in the court below, to quiet title to lots five (5) six (6), seven (7) eight (8), and nine (9) in block forty-three (43) in Capitol Hill, Guthrie.   His title to said lots is based on two tax deeds and by order of court subsequently obtained. The copies of the tax deeds were attached to said petition and marked as exhibits.   James O'Keefe, plaintiff in error, defendant below, filed his answer and cross-petition.   By his answer, the defendant below denies that plaintiff is the owner of said premises or has the legal title to the lots described in said petition, and for his cross-petition the defendant avers and alleges that he has the legal title and equitable estate in and to the lots described in plaintiff's petition, under and by virtue of a deed from the townsite trustees to said defendant, and for reply to said cross-petition, the plaintiff denies the allegations thereof, except that he admits possession of the premises therein described, and in such reply pleads as to such cross-petition the statute of limitations.   A jury having been waived, and this cause submitted to the court on the issues formed by the pleadings herein, and the court having heard all of the evidence and the argument of counsel, and being fully advised in the premises, finds from the evidence that the plaintiff Aaron Dillenbeck has, and had when this suit was commenced, a good and valid tax

title in fee simple to the property therein described, and that he was in possession of this land when this suit was commenced, and that the claim of James O'Keefe to said land is invalid. Judgment is therefore rendered in favor of the plaintiff quieting title and possession in him against the claims of the said defendant.

Motion for new trial was duly filed, overruled, and excepted to. Time given for case made, case made served and signed, and the case brought here for review.

Opinion of the court by

IRWIN, J.: The first assignment relied upon by the plaintiff in error for a reversal of this case is: "The court erred in admitting in evidence the tax deed of the defendant in error, dated February 10, 1898, as a valid tax deed." We have examined the record as to this assignment of error and we can see nothing from an examination of the deed on its face that would render it invalid, and hence it would be admissible in evidence.

There are six assignments of error by the plaintiff in error, but we think they can be considered under three heads, and we will consider them in the inverse way. That is, at this point, we will consider assignment No. 4, to-wit:

"The court erred in excluding evidence offered by the plaintiff in error to show that the county commissioners did not meet as a board of equalization for equalization of taxes on either of the two days required by statute in June, 1894."

This assignment of error may be considered in connection with assignment No. 3, to-wit:

"The court erred in excluding proper evidence offered by plaintiff in error to show that the tax deeds offered in

evidence by defendant in error are based on illegal taxes of the year 1894."

The plaintiff in error, defendant in the court below, offered to prove by the deputy county clerk and the county treasurer, that some of the tax levies upon which Dillenbeck's tax deeds are based, were unauthorized and illegal, and also offered to prove by the county commissioners' records of 1894, that no meeting of the board of county commissioners as a board of equalization was held on the first Monday in June, 1894, or on the second day, or on either of the two days fixed by statute for the equalization of taxes by the county commissioners as a board of equalization, and on objection, the court excluded this testimony. Now we think this action of the court can be sustained upon two grounds: First. the record only discloses that the defendant in the court below offered certain records, but does not show what the records offered to be introduced contained, or what the testimony of the deputy county clerk, or the county treasurer would be, and this court is unable to say whether the answers of the deputy county clerk, or the county treasurer, would be favorable or unfavorable to the party offering the witness. Neither can this court say what that record as offered contained. We take the rule to be that where evidence is offered, an objection to which is sustained, before error can be predicated thereon, the record must contain the evidence, or sufficient of the evidence to show that its rejection was injurious to the party complaining. This rule seems to have the approval of the United States supreme court. In the case of *Shauer v. Aller-lon,* 151 U. S. 617, the court say:

"The refusal of the court to allow the plaintiff to read the answer of the witness Nash, to the question: 'you may

state whether or not that check has all the appearance of having passed through the bank in the ordinary course of business,' cannot be assigned as error. The bill of exceptions does not state what answer was made to the question in the deposition of the witness. It does not even state the facts the answer tended to establish. We cannot therefore say that the exclusion of the answer was prejudicial to the plaintiff. For aught that appears in the record, the witness may have made an answer that was injurious to the plaintiff, or one that was of no value to either party."

In the case of *Packet Co. v. Clough,* 20 Wall. 528-542, the rule is laid down that a party complaining of the rejection of evidence must show that he was injured by its rejection, and his bill of exceptions must make it appear that if it had been admitted it might have led the jury to a different verdict.

In *Whitney v. Fox,* 166 U. S. 644, the supreme court follows this rule, and refuses to pass on an assignment of error for refusing to allow a deposition to be read, because the deposition was not in the record. Now applying the rules laid down in this case to the case at bar, we think it was not error for the court to reject this testimony. It is true the plaintiff in error offered certain records, but these records are not set up in the case made for this court, and it is impossible for this court to say that their rejection worked any harm to the plaintiff in error. The record of the board of county commissioners which was said to have been introduced for the purpose of proving that the equalization board did not meet in 1894, is not set out in the case made so that this court can see what it does contain, or what it tends to prove. Another reason why we think the objection was properly sus-

tained, is on account of the condition of the pleadings. The answer of the defendant is as follows:

"Now comes said defendant and for his answer to plaintiff's petition filed herein, denies that plaintiff is the owner of and has the legal title to the lots described in said petition.

"And for his cross-petition in said action, defendant avers and alleges that he has a legal and equitable estate in and to the lots described in plaintiff's petition under and by virtue of a deed from the townsite trustees to said defendant, and that he is entitled to the possession thereof, and that the plaintiff unlawfully keeps him, said defendant, out of the possession of said lots. Now if the pleadings do not raise an issue of the validity of the tax deed relied upon by the plaintiff, then any evidence which does not tend to prove an issue raised by the pleadings would be properly rejected. Under the Laws of 1893, chapter 70, section 25, running section 5667, under the heading of 'Revenues,' and in reference to tax deeds, the following language is used:

" 'That it shall be signed and executed by the county treasurer in his official capacity, and acknowledged before some officer authorized to take acknowledgments of deeds; and when substantially thus executed and recorded, in the proper record of titles to real estate, shall vest in the purchaser a full right, title, and interest in and to said lands. Such deed shall be presumptive evidence in all the courts of the Territory, in all suits and controversies in relation to the rights of the purchaser, his heirs or assigns, to the land thereby conveyed, of the following facts: (1) That the real property deeded was subject to taxation for the year or years stated in the deed; (2) that the taxes were not paid at any time before the sale; (3) that the real property deeded had not been redeemed from sale at the date of the deed; (4) that the property had been listed and assessed; (5) that the taxes were levied according to law; (6) that the property was sold for taxes, as stated in the deed, and was duly advertised be-

fore being sold, and to defeat the deed it must be clearly pleaded and clearly proven that some one of the above named six requisites was wholly omitted and not done and a showing that any one or all of them were irregularly done will not be sufficient to defeat the deed. * * * *.' "

An examination of the answer will show that the answer and cross-petition which attacks this deed does not set out any defect whatever in the deed, and does not contain the necessary statutory requisites to raise the question of the validity of the deed or raise the issue as to whether any one of the six statutory requirements have been complied with; and where a special statute expressly directs what the pleading in particular case must contain, and where the pleader desires to attack the pleading described in such statute, he must conform to the statute.

Now we take it from the brief of the plaintiff in error that he does not claim that the board of equalization did not meet at all, but only that it did not meet on a certain day, or that it did not meet on either of the days provided by law for its meeting. While if it met on some other day than the particular day appointed by statute, it does not necessarily follow that its meeting would be illegal and void, but would only at best be irregular, and section 5667 above referred to contains the express provision that to defeat the deed it must be clearly pleaded as well as proven that there was an entire failure to do some one of the acts required by statute. And to hold that the irregular doing of one of the requirements would defeat the deed would be to entirely ignore the statute. We think on this ground this evidence was properly re-rejected.

The only remaining assignment of error which we deem it necessary to consider is the second assignment of error, to-wit:

"The court erred in holding that the statute of limitations had run in favor of said tax deed of February 10, 1898, and that plaintiff in error is barred from attacking said tax deed by evidence *aliunde*."

In considering this assignment of error, we desire to keep in mind at all times the distinction between a tax deed that is void because of some inherent want of power to sell the land for taxes, such as payment of taxes before sale, or that the land is not subject to taxation, and a voidable tax deed because of some irregularity in the deed. Now we think this deed comes within the latter class. We think that an examination of the record and the brief of counsel for plaintiff in error will show that the objection raised to this deed was largely, if not entirely of a technical character. The fact that taxes for two years were included in one deed does not render it invalid. In *Hunt v. Chapin*, 3 N. W. 873, it is held that a tax deed based upon distinct taxes of different years, is valid if any one of the sales was valid, whether the others were or not. In regard to objections to tax deeds which are purely technical, the case of *Callinan v. Hurley*, 93 U. S. 390, is interesting as bearing directly on this point. In that case, the supreme court of the United States in construing a statute almost exactly like ours, says:

"The whole act exhibits an intention of the legislature to enforce the payment of taxes by securing purchasers of tax sales in their purchases, and thus make it dangerous for owners of property to neglect the payment of taxes due the state. It removes difficulties which had before existed in the way of establishing a tax title, and at the same time it

works no injustice to owners of land subject to taxation. The law determines when the taxes should be levied and when they shall be paid, and it gives ample time within which to make the payment. * * * If the act is to have any effect at all, it is plain that the deed cuts off most of the averments upon which the plaintiff bases his attempt to obtain the cancellation he seeks."

In the case of *Pillow v. Roberts,* 13 How. on page 476, the supreme court of the United States uses the following language:

"It is easy. by very ingenious and astute construction, to evade the force of almost any statute, where a court is so disposed. We might say that the expression, 'Deeds so made by the collector' means deeds made strictly according to the requirements of all the preceeding sections of the revenue law, and decide that only deeds first proved to be completely regular and legal can be received in evidence; and thus by qualifying the whole section by such an enlarged construction of these two words and disregarding all the others, evade the obvious meaning and intention of the law. For if you must first prove the sale to be regular and legal before the deed can be recorded, what becomes of the provision that the deed itself shall be evidence of these facts? Such a construction annuls this provision of the law, and renders it superfluous and useless. The evil plainly intended to be remedied by this section of the act, was the extreme difficulty and almost impossibility of proving that all the very numerous directions of the revenue act were complied with, antecedent to the sale and conveyance by the collector.

"Experience has shown that where such conditions were enforced, a purchaser at tax sales, who had paid his money to the government and expended his labor on the faith of such titles in improving the land usually became the victim of his credulity and was evicted by the recusant or some shrewd speculator. The power of the legislature to make

the deed of a public officer *prima facie* evidence of the regularity of the previous proceedings, cannot be doubted. And the owner who neglects or refuses to pay his taxes or redeem his land has no right to complain of its injustice. If he has paid his taxes, or redeemed his land, he is, no doubt, at liberty to prove it, and thus annul the sale. If he has not he has no right to complain if he suffers the legal consequences of his own neglect."

It will be noted that in this case this tax deed is not absolutely void. There is no contention that the land was not taxable, but the form of the deed only is attacked. Our statute for 1893, running section 5668, provides: ·

"No action shall be commenced by the holder of the tax deed, or the former owner or owners of the land by any person claiming under him or them to recover the possession of the land which has been sold and conveyed by deed for the non-payment of taxes, or to avoid such deed, unless such action shall be commenced within one year after the recording of such deed."

This question came directly and squarely before the supreme court of the United States in the case of *Pillow v. Roberts,* reported in the 13 How. 472, and that court used the following language:

"But, assuming these deeds to be irregular and worthless, the court erred in refusing to receive them in evidence, in connection with proof of possession, in order to establish a defense· under the statute of limitations.

"The first section of the act of limitations of Arkansas bars the entry of the owner after ten years. And the thirty-fifth section enacts that 'all actions against the purchaser, his heirs, or assigns, for the recovery of lands sold by any collector of the revenue for the non-payment of taxes, and for lands sold at judicial sales, shall be brought within five years after the date of such sales and not after.

"Statutes of limitations are founded on sound policy. They are statutes of repose and should not be evaded by a forced construction. The possession which is protected by them must be adverse and hostile to that of the true owner. It is not necessary that he who claims their protection should have a good title or any title but possession. A wrongful possession, obtained by a forcible ouster of the lawful owner, will amount to a disseizin, and the statute will protect the disseizor. One who enters upon a vacant possession, claiming for himself, upon any pretence or color of title, is equally protected with the forcible disseizor. Statutes of limitations would be of little use if they protected those only who could show an indefeasible title to the land. Hence, color of title, even under a void and worthless deed, has always been received as evidence that the person in possession claims for himself, and of course adversely to all the world. A person in possession of land, clearing, improving, and building on it, and receiving the profits to his own use, under a claim of title, is not bound to show a forcible ouster of the true owner in order to evade the presumption that his possession is not hostile or adverse to him. * * *

"In order to entitle the defendant to set up the bar of this statute, after five years' adverse possession, he had only to show that he and those under whom he claimed, held a deed from a collector of the revenue, of lands sold for the non-payment of taxes. He was not bound to show that all the requisitions of the law had been complied with in order to make the deed a valid and indefeasible conveyance of the title. If the court should require such proof before the defendant could have the benefit of this law it would require him to show that he had no need of the protection of the statute before he could be entitled to it. Such a construction would annul the act altogether, which was evidently intended to save the defendant from the difficulty, after such a length of time, of showing the validity of his tax title."

In *Leffingwell v. Warren*, 2 Black, (U. S.) 599, the supreme court of the United States says:

"The statute of Wisconsin limiting the time within which suits for the recovery of lands sold for taxes must be brought, begins to run from the time of the recording of the tax deed, whether possession has or has not been taken by the purchaser.

"It is immaterial whether the sale and the deed be void or valid; it is sufficient that a sale has been made and the deed recorded, to bring the statute into activity, and after the lapse of the period limited to entitle the purchaser, and those claiming under him, to its protection."

This was an action brought to the supreme court of the United States by writ of error to the district court of the United States for the district of Wisconsin, and the supreme court of the United States in passing upon this case, say: (page 605 of the opinion.)

"The lapse of the time limited by such statutes not only bars the remedy, but it extinguishes the right, and vests a perfect title in the adverse holder. It tolls the entry of the person having the right, and consequently, though ·the very right be in the defendant, yet he cannot justify his ejecting the plaintiff."

In the case before the district court of Wisconsin, it was admitted by stipulation of the parties that the deed was recorded on the 6th day of February, 1845, and that this suit was commenced on the 2nd day of October, 1857. The statute creating the bar was repealed between those dates, and after the bar of the statute of limitations had become complete. Upon this state of facts, the court below instructed the jury "That the deed being void, neither it nor the subsequent possession under it, for three years after the recording thereof, is a bar to the plaintiff's recovery."

. The supreme court say:

"This was clearly error." According to the rulings referred to, of the supreme court of the state, it is immaterial whether the sale and the deed be void or valid. It is sufficient that a sale has been made, and the deed recorded, to bring the statute into activity, and after the lapse of the period limited, to entitle the purchaser, and those claiming under him, to its protection.

"Statutes of limitation are now regarded favorably in all courts of justice. They are 'statutes of repose.' Usually they are founded in a wise and salutary policy, and promote the ends of justice.

"The equities in behalf of the plaintiff below are strong. We have all felt their force. Without any fault on his part, he has been divested of the title of his land. But our duty is to apply the law—not make it. If this statute be unwise or unjust the remedial power lies with the legislature of the state and not with this court. The judgment of the court below must be reversed, and the cause remanded for further proceedings in conformity with this opinion."

In the case of *Peck v. Comstock*, 6 Fed. Rep. 22, it is held that although the deed was void, yet the tax purchase is protected by the statute of limitations.

In *Cutler v. Stafford*, 48 Fed. Rep. 268, the court says:

"The defendant also relies on the statute of limitations as a bar to this action. Section 2939 of the code provides that 'any suit or proceeding for the recovery of land sold for taxes, except in cases where the taxes have been paid, or the land redeemed as provided by law, shall be commenced within three years from the time of recording the tax deed and not thereafter, except by the purchaser at the tax sale.' The defendant's deed was recorded more than three years before this suit was commenced. The land was sold for a tax which has not been paid, and it has not been redeemed. If the deed is held to be valid, there can be no question but that the case

is fully within the statute, and barred by it.    The only argu-
ment of the plaintiff on this point is, that the deed is void,
and entirely impotent to serve either as a conveyance of the
title, or as a starter to set time running and bring the case
within the protection of the statute.    If the bar exists only
in cases where valid tax deeds have been recorded, in order to
determine whether a case is barred or not, to try it on its
merits.    To so hold is equivalent to holding that the statute
is not a bar in any case, for if the deed conforms to the re-
quirements of the law in all respects, it will convey the title,
and a defendant claiming under such a deed must prevail by
reason of having a perfect title—that is to say, win the case
on its merits, and if the tax deed be invalid by reason of non-
observance of any essential provision of the law, the plaintiff
cannot be defeated within any period of time.    Such doctrine
is contrary to the manifest design of this species of legis-
lation.    The purpose of a statute of limitation is to put an
end to strife by cutting off the right to dispute the validity
of proceedings to divest the owner of his title after the lapse
of a definite period of time."

In the case of *Walker v. Cronkite*, 40 Fed. Rep. 133,
which was a judicial sale where the plaintiff sought to attack
the validity after the statute of limitations had run, on page
136, the court says:

"The argument that the plaintiff is deprived of his prop-
erty without having his day in court has no force, for it is
the very essence of all statutes of limitations that the party
shall lose his rights and his property unless he shall assert
these rights within a fixed time.    Nor does it relieve the case
from the statute because the plaintiff asserts that the judg-
ment is void for want of jurisdiction.    The property was sold
on execution on a judgment legal on its face, and the debtor is
barred from showing by evidence *aliunde* that the judgment
is void or voidable after the period fixed by the statute."

In *Bullis v. Marsh,* 2 N. W. 578, in a decision rendered by the Iowa supreme court, it is held that the validity of a tax deed cannot be attacked after five years from the sale, because it shows that several parcels were sold for a gross sum. To the same effect is *Monk v. Carbin,* 12 N. W. 571; *Thomas v. Stickle,* 32 Iowa, 71; *Douglas v. Tullock,* 34 Iowa, 262. In *Lindsay v. Foy* 25 Wis. 460, it is said:

"An action cannot be maintained under section 123, ch. 15, R. S. 1894, by the original owner of land sold for taxes against one who has been in possession of it for three years, claiming title in good faith under a tax deed, although the deed is void upon its face."

On page 463 of the same report, in the opinion, the court says:

"The statute of limitation makes no reference to the form of the deed. It does not say a tax deed valid on its face. For all that appears, it is in entire harmony with the intention of the legislature that the deed should be such only, as should create in the mind of the purchaser, a person not skilled in the learning and technicalities of the law, that he had acquired a good title; that it should be executed by the officer authorized by law, be signed, sealed, acknowledged according to the usual form for the conveyance of land, and purport by apt and proper words, on its face, to convey the land, notwithstanding it might be technically insufficient for that purpose."

In *Ward v. Higgins,* 7 Wash. 617 it is said:

"A void tax deed under which the grantee has entered and held possession of the land in controversy, constitutes such color of title as will sustain the bar of the statute of limitations provided for actions relating to tax deeds."

In *Coleman v. McCune,* 39 Iowa, 509 it was held that a tax deed void upon its face, constitutes such color of title upon which the statute of limitations may be invoked. In *Millidge*

*v. Coleman,* 47 Wis. 184, the supreme court of that state used the following language:

"In the very recent case of *Oconto Company v. Jerrard,* 46 Wis. 317, the effect of the tax deed where the statute had run was very fully considered. In that case there was no pretense that the tax for which the deed was issued, proceeded upon a regular, fair and equal assessment of the property to be taxed. A more fundamental and fatal defect in the tax proceedings than this could not well exist since a valid assessment is the foundation of the tax. In answer to the argument that the statute was not intended to apply to such a case, and that the deed could be impeached for a radical defect, the Chief Justice uses this language: 'The respondents had their day to impeach the tax proceedings and avoid the tax deed: Then they might have said that the groundwork was so defective that there was no tax. This they did not then do, and they are now too late to do it. They suffered the statute to purge the tax proceedings of all defects to raise the tax deed above impeachment. Their objections may all be well founded, but they came out of time. What the respondents might have done they cannot now do. The statute has left them like one estopped to speak the truth because they did not speak it when they might.' "

While there is some conflict of authorities, and the doctrine as to whether a deed void upon its face will operate to put the statute of limitations in force is not entirely free from doubt, or thoroughly settled, as there are many respectable authorities which hold to the contrary, we think there can be no doubt that where a deed is valid on its face and is only void by reason of certain extrinsic facts which might be proven against it that such a deed accompanied by possession for the statutory period, will, by virtue of the statute of limitations, be a bar to an action to set aside said deed by any former owner, or those claiming under or through him. Now

we think that an examination of this deed will show that it is not void upon its face; and in the absence of any proof showing any extrinsic facts that would invalidate it, it is sufficient to show title in the holder of such deed. The ground on which plaintiff in error claims that said deed is void upon its face is as to uncertainty in place of date and place of sale. Now the deed plainly recites that these lots were sold at two distinct sales. One on the 5th day of September 1894, and one on the 18th of September, 1895, at each of which sales a certificate was issued to Joseph Stiles, who upon those dates was the treasurer of Logan county. From these certificates, it appears that the county of Logan, by its treasurer, in the absence of other bidders, purchased at public auction the lots in question, which lots were sold to the county of Logan for the sum of $28.59, being the amount due on said tracts of land, and for which the taxes on said land were wholly delinquent for non-payment for the years 1893, and 1894, respectively. As to uncertainty as to place, the recital in the deed shows that the respective sales took place at the door of the court house, and at the county treasurer's office. This recital is evidently made to reconcile a conflict or apparent conflict of our statutes on this subject, as section 5652 of the laws of 1893 requires the sale to be made at the county treasurer's office, while the form of tax deed set up in section 5667, puts the place of sale at the court house door. Now we would not be justified in indulging in the presumption that the recitals in said deed were not true, neither do we know of any valid objection to this sale taking place at both these places, to-wit: The county treasurer's office and the court house door. If either place was the legal place for such sale, then the fact,

that the sale was made at some other place would not invalidate or make illegal such sale.

Another objection which the plaintiff in error raises to this deed is that the recitals show that the county of Logan purchased the lots at public auction for a lump sum in cash, to-wit: $28.59, and for that reason the sale is void. In support of this he cites *Magill v. Martin,* 14 Kas. 81, and *Larkin v. Wilson,* 28 Kas. 514, but we think an examination of these authorities will not bear out his contention in this particular. Both these cases was where the recitals in the deed show that the county was a competitive bidder at the tax sale, and for this reason, and this reason only, the tax sale was decided to be illegal and the deed void. We think the recitals in this deed will not bear any such construction.

In the case of *Larkin v. Wilson,* the recitals in the deed show that the county made the first bid, which was an offer to pay the full amount of the taxes and assessments due, and that after that bid no other bids were made, and for this reason the supreme court of Kansas say in fact that the action of the county treasurer in making the first bid for the county of the value of the amount of the taxes and assessments due was entering into competition with other bidders. In that case the recitals did not show that there was an absence of other bidders, but simply that they did not bid. In this case the recitals in the deed plainly show that there were no other bidders, or that no other bidders offered to bid.

The plaintiff in error also cites the case of *Taylor v. Miles,* 5 Kas. 302, but an examination of that case will show that it was decided upon a proposition which does not occur in the case at bar. That is the dates of the certificate and the date of the deed, together with the delinquent tax lists

showed upon their faces that at the time of this sale for taxes that the same was for taxes levied upon the real estate for which the real estate was not liable, as the title to the real estate at that time was in the government of the United States, and not subject to taxation. This appearing, as a matter of record, and from the recitals contained in the deed, would render the deed absolutely void.

Plaintiff in error also cites the case of *Hall's Heirs v. Dodge*, 18 Kas. 277, but an examination of that case will show that the tax deeds in evidence show by their recitals that they were executed both on the same day and for the taxes of the same year, and that each deed was for separate and distinct tracts of land situated in different parts of the same county, and in different townships and ranges, and that each deed shows that these different tracts were sold together in one single sale, and the court there held that such a sale was void, but in the same opinion, the court says:

"Of course, where two or more tracts of land adjoin each other, and are used and occupied as one tract, they may all be taxed together, and sold together as one tract."

Now in the deed in the case at bar, there is nothing to show that the lots described in this tax deed were not lots or tracts of land adjoining each other, or that they were not used and occupied together as one tract, and there is nothing to show the illegality or impropriety of taxing them together.

Plaintiff in error also cites the case of *Redfield v. Parks*, 132 U. S. 239, to 252, but an examination of that case will show that there, by the recitals of the deed, the land sold for taxes was not subject to taxation at the time they were assessed, as it was then a part of the public domain of the United States; and upon this ground, and this ground alone the

supreme court of the United States holds that in such cases the title being in the United States, no adverse possession could be obtained so as to put the statute of limitations in operation; the deed is immaterial where the party has gone into possession under it, and the time provided by the statute of limitation has expired. Another equally respectable and well reasoned line of authorities holds to the contrary doctrine. Among these is the case of *Redfield v. Parks*, 132 U. S. 239; *Watterson v. DeBoe*, 18 Kas. 223; *Mason v. Crowder*, 85 Mo. 526; *Sheehy v. Hinds*, 27 Minn. 259; *Cutler v. Hurlbut*, 29 Wis. 152; *Coner v. Chaly*, 6 Colo. 314; *Wofford v. McKenna*, 23 Tex. 36. All of these cases, by able and well reasoned opinions, hold to the doctrine that a tax deed, which by its recitals shows upon its face that it is void, will not be sufficient to support the statute of limitations. But all of these cases announce the rule that where a deed is sufficient upon its face to make *prima facie* evidence of title, it is not necessary that it be sufficient to withstand all evidence offered against it to show that it was void, but if it is good on its face, in the absence of proof extrinsic of itself of invalidity, it will be sufficient to support the statute of limitations. So in view of the conflict of authority on the point, we do not deem it advisable at this time to announce what the decision of this court would be in the case where the deed was invalid on account of its own recitals, or void upon its face, as this question is not necessary for the decision of the case at bar.

And we think there is another and conclusive reason why the decision of the district court was right. That is, that there is nothing upon the face of the second deed to show that it is invalid, and no evidence has been introduced

to show that it is not in every way legal; and in fact, no attack has ever been made upon it. And in the case of *Finley v. Brown;* 22 Iowa, 538, it was held proper to take in evidence two tax deeds for the same land, one of which was executed to cure an informality of the other. Now if this doctrine is correct, then we can see no reason why the title of the defendant in error was not complete by virtue of his second deed. This second deed was made, signed, and acknowledged by the county treasurer, in his official capacity, on a certificate of purchase of the date of the 18th of November, 1895, for the taxes and assessments of the year 1894, and was executed on the 21st day of May, 1902, and regularly acknowledged on the 28th day of May of the same year, before a notary public. The time of redemption by the plaintiff in error would expire on the 18th day of November, 1897, which was four years and over prior to the execution of this deed, and we are unable to see why this deed in its recitals, its execution and acknowledgment, does not convey the legal title to the defendant in error, and why it does not fully sustain the judgment and decision of the district court.

For the reasons herein expressed, the judgment and decision of the district court are affirmed.

Burford, C. J. who presided in the court below, not sitting; all of the other Justices concurring.